**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joan G. Uhl,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Lake Havasu City; et al.,<br><br>　　　　Defendants. | No. CV 06-1084-PHX-JAT<br><br>**ORDER** |

Defendants have filed a Motion for Summary Judgment (Doc. #44). The Court now rules on the motion.

**I.    FACTUAL BACKGROUND**

Plaintiff Joan Uhl worked for Lake Havasu City as a City Prosecutor from July 2000 until October 2004. Ms. Uhl's boss was City Attorney Maureen George. Ms. George made the decision to fire Ms. Uhl.

Ms. Uhl argues Ms. George terminated her in retaliation for discussing with Ms. George: 1) that the City had awarded money to a social services agency headed by Richard Miers, who had a prior conviction for embezzlement; and (2) that Finance Director Mike Ashley had misused his City credit card. Ms. Uhl sued under §1983 for violation of her First Amendment rights. Ms. George undisputedly had nothing to do with hiring or funding the Miers agency and had no authority to take any action regarding alleged credit car misuse by Mr. Ashley.

Ms. Uhl claims that she first raised her concern regarding the Miers conviction in 2001. She allegedly discussed the Miers issue again with Ms. George in 2003 and July of 2004. By July of 2004, the local newspaper had widely publicized the Miers conviction. Ms. Uhl admits that she never went to the Lake Havasu City Counsel or the City Manager or the public at large regarding Miers. Ms. Uhl admits that Ms. George had praised her in performance reviews for raising the Miers issue.

Ms. George claims she first mentioned Ashley's alleged credit card misuse in 2003 and again in 2004. Ms. Uhl allegedly told Ms. George in 2003 that Ms. Uhl had heard Ashley was misusing his City credit card, and Ms. Uhl commented again in 2004 that she couldn't believe Ashley was still misusing his credit card. Ms. Uhl never discussed the alleged misuse with the City Council, a City Manager, or the public at large. Ms. George herself approached four different City Managers about Ashley. By the time of Ms. Uhl's termination, the City police were discussing Mr. Ashley's use of his credit card.

Ms. Uhl alleges two adverse employment actions – withholding of an annual evaluation and her ultimate termination. In the summer of 2004, Ms. George failed to give Ms. Uhl her annual performance evaluation. Ms. Uhl had to have the performance evaluation to receive her annual raise. Ms. Uhl alleges that Ms. George withheld the performance evaluation in retaliation for Ms. Uhl's comments about Miers and Ashely. Ms. George claims that she did not fill out the performance evaluation on time because she was very busy with a project at work. Ms. George apologized for the delay and reassured Ms. Uhl that she would receive any pay increase retroactive to July 2004.

Ms. George terminated Ms. Uhl on October 7, 2004. Ms. George argues that she terminated Ms. Uhl because of a few citizen complaints and because of Ms. Uhl's behavior on the job. Ms. Uhl's written notice of termination did not list a reason for the termination. Ms. Uhl alleges that Ms. George told her that she was being terminated because they just weren't getting along.

In this case, Ms. George has maintained that she fired Ms. Uhl because of: (1) a citizen complaint from a couple who attended a criminal proceeding with their daughter; (2)

1 another citizen complaint from a person with whom Ms. Uhl had an encounter regarding his
2 driving in front of the Police Department; and (3) a phone call with a City Council member
3 that Ms. George believed presented a potential ethical problem. At approximately the same
4 time she terminated Ms. Uhl, Ms. George reported the City Council phone call to the Arizona
5 State Bar. The Bar did not take any disciplinary action regarding the incident.

6 At one point, Ms. Uhl went to the EEOC and indicated she believed that Ms. George
7 fired her because of her gender. Later, she claimed that Ms. George terminated her in
8 retaliation for talking with a City Council member about alleged sexual harassment from a
9 City Manager. Ms. Uhl then filed this action on April 18, 2006, based on retaliation for the
10 two comments previously discussed.

11 **II. LEGAL STANDARD**

12 Summary judgment is appropriate when "the pleadings, depositions, answers to
13 interrogatories, and admissions on file, together with affidavits, if any, show that there is no
14 genuine issue as to any material fact and that the moving party is entitled to summary
15 judgment as a matter of law." Fed. R. Civ. P. 56©. Thus, summary judgment is mandated,
16 "...against a party who fails to make a showing sufficient to establish the existence of an
17 element essential to that party's case, and on which that party will bear the burden of proof
18 at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

19 **III. MATTER OF PUBLIC CONCERN**

20 In order to prevail on a claim for First Amendment retaliation, an employee must
21 show: "(1) that he or she engaged in protected speech; (2) that the employer took 'adverse
22 employment action;' and (3) that his or her speech was a 'substantial or motivating' factor
23 for the adverse employment." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)
24 (quoting *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996)). The First
25 Amendment protects an employee's speech if the speech addresses "'a matter of legitimate
26 public concern.'" *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968)). If the
27 employee did not speak on a matter of public concern, then the employee has no First
28 Amendment cause of action based on the employer's reaction to the speech. *Garcetti v.*

1 *Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1958 (2006).  The Court decides as a matter of law
2 whether the employee's speech involved a matter of public concern.  *Connick v. Myers*, 461
3 U.S. 138, 148 n.7 (1983).

4       The Court must determine whether an employee's speech addresses a matter of public
5 concern by reviewing the "content, form, and context of a given statement, as revealed by
6 the whole record."  *Id*. at 147-48.  Although the Court considers the content of the speech
7 first and foremost, form and context also inform the Court's decision regarding whether
8 speech is protected.  *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 979 (9th Cir.
9 2002).  Ms. Uhl bases her retaliation claim on her two statements in 2004 regarding the Miers
10 issue and the Ashley issue.  The Court therefore will analyze the content, form, and context
11 of those statements.

12       Ms. Uhl's 2004 statements about Mr. Miers, a convicted embezzler who headed a
13 social services agency receiving contracts from the City, and Mr. Ashley, a City Finance
14 Director who allegedly mis-used his City credit card, involved alleged possible misuses of
15 City funds.  Courts have found that the misuse of public funds is a topic of public interest.
16 *Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 747 (9th Cir. 2001).  But the
17 mere fact that an employee's speech relates to public monies does not, by itself, qualify that
18 speech as touching on a matter of public concern.  *Rahn v. Drake Center, Inc.*, 31 F.3d 407,
19 412 (6th Cir. 1994) ("The mere fact that public monies and government efficiency are related
20 to the subject of a public employee's speech do not, by themselves, qualify that speech as
21 being addressed to a matter of public concern.).

22       While the content of Ms. Uhl's speech involves a topic of public interest, the form and
23 context of her comments belie any "public nature."  Her remarks in 2004 were comments to
24 a co-worker, who also happens to be her supervisor, regarding topics of general interest – for
25 instance, "I can't believe he is still misusing his card."  The Court must consider the context
26 and form of the statements to avoid turning a water cooler conversation into an actionable
27 constitutional violation.  *Weeks v. Bayer*, 246 F.3d 1231, 1235-36 (9th Cir. 2001) (stating,
28 "This was mere every-day conversation between government employees.  To protect this

- 4 -

single comment would go a long way toward rendering actionable every job-related conversation between government employees. Water cooler conversation would become the stuff of First Amendment claims, and casual remarks about work would be elevated to constitutional complaints.").

"The form and context of the speech may help to characterize it as relating to a matter of [public concern] if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed." *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993). Although a matter can be of public concern even when the employee speaks only privately on a matter, *Connick*, 461 U.S. at 146, an employee's attempt to reach the general public is relevant. *Havekost v. U.S. Dep't of Navy*, 925 F.2d 316, 318-19 (9th Cir. 1991) ("One critical inquiry is whether the employee spoke in order to bring wrongdoing to light . . .").

Ms. Uhl had approached Ms. George regarding the Miers and Ashley issues in previous years. Ms. Uhl never attempted to communicate with the public or with anyone who had power over City contracts or Mr. Ashley. By the time she made the comments she relies on in this suit, the Miers issue had appeared in the paper. Further, her comment regarding Mr. Ashley – that she could not believe Ashley was still mis-using his credit card (DSOF ¶17), does not indicate an attempt "to bring wrongdoing to light." Both remarks were nothing more than comments made to a co-worker that happened to concern topics of general interest. The Court therefore will not extend First Amendment protection to Ms. Uhl's comments as matters of public concern. Because Ms. Uhl has not satisfied the first element of a First Amendment retaliation claim, the Court will not analyze the remaining elements. Accordingly,

IT IS ORDERED GRANTING Defendants' Motion for Summary Judgment (Doc. #44).

DATED this 12th day of March, 2008.

_____
James A. Teilborg
United States District Judge